IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DOUGLAS DUANE SOMERSON, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 1:12-cv-00043-MHS |
| | ) | |
| v. | ) | |
| | ) | |
| VINCENT K. MCMAHON, LINDA E. | ) | |
| MCMAHON, and WORLD | ) | |
| WRESTLING ENTERTAINMENT, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF
### MOTION TO DISMISS BY VINCENT K. AND LINDA E. McMAHON

Defendants Vincent K. McMahon and Linda E. McMahon respectfully submit this memorandum of law in support of their Motion to Dismiss all claims asserted against them by Douglas Somerson ("Plaintiff") pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(4), and 12(b)(6).

## I.  INTRODUCTION

Plaintiff was a professional wrestler who performed for the American Wrestling Association ("AWA") under the character name of "Pretty Boy" Doug Somers.  Plaintiff's performances were recorded by AWA, which owned that

footage as well as all copyrights therein.  Plaintiff does not claim any copyright ownership in such AWA footage in his Complaint.  Nor does Plaintiff claim that the recordings of his performances made by AWA somehow were without his knowledge and consent.  Plaintiff further does not claim that he was not compensated by AWA for his performances.

In 2003, WWE purchased the AWA film library and all copyrights thereto, including the copyrights in and to footage containing Plaintiff's performances as "Pretty Boy" Doug Somers.  Significantly, Plaintiff does not allege that he has ever been under contract to WWE or performed for WWE.  Rather, the alleged use by WWE of footage containing Plaintiff's name and likeness involves WWE's production and sale of WWE-copyrighted DVDs which, in part, include footage that WWE acquired from AWA.  Specifically, Plaintiff appears in certain footage along with Shawn Michaels, a former AWA wrestler who subsequently joined WWE and became one of WWE's most popular and celebrated wrestlers.  Due to Shawn Michaels' popularity and success as a WWE wrestler, WWE has released various DVDs that illustrate aspects of his career through the use of historical footage of certain of his wrestling matches, including wrestling matches from AWA.  Such historical AWA footage of Shawn Michaels, the copyrights in which were acquired by WWE and are exclusively owned by WWE, includes footage of

Michaels performing with Plaintiff as "Pretty Boy" Doug Somers for AWA in the late 1980s.

Plaintiff's Complaint asserts the following claims against Mr. and Mrs. McMahon in their individual capacities: Count I – Invasion of Privacy; Count IV – Violation of Georgia Uniform Deceptive Trade Practices Act; Count V – Violation of Right of Publicity; and Count VI – Negligent Supervision. By this Motion, Mr. and Mrs. McMahon seek the dismissal with prejudice of each of these claims based on: (1) this Court's lack of personal jurisdiction over Mr. and Mrs. McMahon; (2) insufficient service of process on Mr. and Mrs. McMahon; and (3) failure to state claims upon which relief can be granted against Mr. and Mrs. McMahon in their individual capacities for the specific reasons described in detail below.

Additionally, as demonstrated in WWE's Memorandum of Law in Support of its Motion to Dismiss ("the WWE MTD Brief") filed concurrently herewith, the claims asserting that WWE wrongfully used the name, likeness, and performances of Somerson contained in copyrighted works owned by WWE fail as a matter of law for the multitude of reasons described in detail in the WWE MTD Brief. Being meritless as against WWE, those claims are even more meritless when asserted against corporate officials in their individual capacities. Accordingly, Mr. and Mrs. McMahon adopt and also move for dismissal on all the grounds

demonstrated by WWE's MTD Brief, but will not repeat those arguments here. This Memorandum is limited to those specific arguments available to the McMahons based on their individual joinder in this case and the insufficiency of the allegations made to justify suing them individually.

## II.    THE ALLEGATIONS AGAINST THE McMAHONS INDIVIDUALLY

The allegations against the individual McMahon Defendants in the Complaint are few and far between.  The only allegation of personal participation by Linda McMahon in the alleged circumstances at issue is that, solely by virtue of her role as "the officer ultimately responsible for DVD marketing," she supposedly "participated in the decision to publish for commercial purposes the 'Pretty Boy' Doug Somers persona."  Complaint, ¶ 27.  The Complaint also alleges that Linda McMahon "knew or should have known that no royalty payments were made to" Mr. Somerson.  *Id.* at ¶¶ 27, 29.  The purpose of this latter allegation is not obvious, since neither Linda McMahon nor Vincent McMahon was sued on Count III – the specific count which alleges failure of WWE to pay royalties.

As to Vincent McMahon, the allegations are even thinner.  Unlike the scant allegation against Mrs. McMahon, Mr. McMahon is not alleged to have been "ultimately responsible" for anything, much less the activity alleged in the Complaint.  Instead, he merely is alleged to be one of the two "principal force[s]

behind [WWE's] commercial activities" – a status which alone could never justify joinder of corporate executives on alleged corporate liabilities. *See id.* at ¶ 2. In terms of anything approximating an actual factual allegation, it is only alleged that Vincent McMahon personally did not seek or obtain Mr. Somerson's consent to use his name and likeness. *Id.* at ¶ 22. No other factual allegations relevant to Mr. McMahon's personal participation in the alleged uses of Mr. Somerson's name and likeness are pled anywhere in the Complaint.

Plaintiff does allege in Count VI for "Negligent Supervision," in conclusory terms, that "Vincent and/or Linda McMahon were responsible for supervising the actions of WWE's marketing personnel," including specifically the release of "videos and other merchandise that featured Mr. Somerson." *Id.* at ¶ 53. Contrary to alleging any actual personal participation by Mr. or Mrs. McMahon, however, Plaintiff alleges that "Vincent and Linda McMahon's failure to properly supervise" is the reason Mr. Somerson's name was used, supposedly in violation of his exclusive right to control the use of his name. *Id.* at ¶¶ 54, 56.

### III.  <u>ARGUMENT</u>

**A.  This Court Lacks Personal Jurisdiction Over Mr. and Mrs. McMahon,**
**<u>Which Mandates Dismissal Pursuant To Fed. R. Civ. P. 12(b)(2)</u>**

The Court must dismiss all claims against Mr. and Mrs. McMahon pursuant to Fed. R. Civ. P. 12(b)(2) because the Complaint fails to plead facts sufficient to

establish this Court's personal jurisdiction over them.  As an initial matter, the Complaint concedes that both of the McMahon Defendants are non-domiciliaries of Georgia – both Defendants are alleged to be Connecticut citizens.  *See* Complaint, ¶¶ 2-3.  Because the McMahons are nonresidents of Georgia, "[b]oth statutory and constitutional authority is necessary for a court to exercise jurisdiction over" them.  *U.S. of Am. for the Use and Benefit of WFT Ga., Inc. v. Gray Ins. Co.*, 701 F. Supp. 2d 1320, 1344 (N.D. Ga. 2010), *aff'd*, *U.S. ex rel. Capital Computer Group, LLC v. Gray Ins. Co.*, --- Fed. Appx. ---, 2011 WL 6412090 (11th Cir. 2011), *citing McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957).  The jurisdictional inquiry involves two parts.  "First, the court must determine whether [a defendant's] alleged acts come within Georgia's Long Arm statute." *Id.*, *citing Madara v. Hall*, 916 F.2d 1510, 1515 (11th Cir. 1990).  "If they do, the court still must assess whether jurisdiction is appropriate under the Due Process Clause of the Fourteenth Amendment." *Id.*

To survive a motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing 'a prima facie case of personal jurisdiction over'" the Defendants. *Id.* at 1344, *quoting Madara*, 916 F.2d at 1514.  "However, mere conclusory statements cannot be relied upon to establish the prima facie case on the issue of personal jurisdiction." *Gerber Garment Tech., Inc. v. Lectra Sys., Inc.*,

699 F. Supp. 1576, 1579 n. 1 (N.D. Ga. 1988); *see also Nationwide Mut. Fire Ins. Co. v. Cato Develop., Inc.*, No. CV 110-118, 2011 WL 4017874, at *4 (S.D. Ga. Sept. 8, 2011) ("bare assertions, without any factual or legal basis, are insufficient to support a finding of personal jurisdiction").

Although the Complaint does not specify the particular section of Georgia's long arm statute that it purports to invoke, it appears that jurisdiction is predicated on O.C.G.A. § 9-10-91(1) and/or (3).  No specific factual allegations are asserted, however, supporting the exercise of jurisdiction under either statute.

With regard to O.C.G.A. § 9-10-91(1), Plaintiff merely regurgitates the language of the statute in asserting the bald and unsubstantiated allegation that "[t]he McMahons regularly transact business in the state of Georgia."  Complaint, ¶ 5.  Plaintiff, however, fails to allege a single contact with Georgia by either Mr. or Mrs. McMahon, much less any business transacted in the state by the McMahons in their individual capacities.  In reality, none exists.

The Georgia Supreme Court has made clear that O.C.G.A. § 9-10-91(1) is "limited by due process considerations."  *Amerireach.com, LLC v. Walker*, -- S.E.2d ---, 2011 WL 5964545, at *7 (Ga. Nov. 30, 2011).  Thus, jurisdiction under § 9-19-91(1) is appropriate only if:

> (1) the nonresident defendant has purposefully done some act or
> consummated some transaction in this state, (2) if the cause of

> action arises from or is connected with such act or transaction,
> and (3) if the exercise of jurisdiction by the courts of this state
> does not offend traditional fairness and substantial justice.

*Id.* (quote and citation omitted).   Plaintiff has included none of these crucial allegations in his Complaint – because he cannot – and has opted instead to state in conclusory fashion only that the McMahons, collectively, "regularly transact business in the state of Georgia."   Indeed, Plaintiff alleges no particularized contacts with Georgia by either Mr. or Mrs. McMahon whatsoever, let alone contacts in connection with the tortious activity alleged in the Complaint.   This is patently insufficient to establish this Court's jurisdiction over such out-of-state individual defendants.

Further, even if **WWE** transacts business in Georgia, the McMahons' status as current or former corporate executives does not automatically confer jurisdiction over them.  *See Canty v. Fry's Elecs., Inc.*, 736 F. Supp. 2d 1352, 1360 (N.D. Ga. 2010) ("That [defendant] is president of a company that does business in Georgia is insufficient to satisfy [the first] prong" of Georgia's long arm statute).  Rather, "a company's contacts with a forum that are independent of an individual employee's contacts with the same forum are not to be aggregated against the individual employee for purposes of the minimum-contacts analysis. . ." *Amerireach.com, LLC*, 2011 WL 5964545, at *5 (quote and citation omitted).  "In

other words, as the Supreme Court held in *Calder v. Jones*, employees of a corporation that is subject to the personal jurisdiction of the courts of the forum may themselves be subject to jurisdiction if those employees were primary participants in the activities forming the basis of jurisdiction over the corporation." *Id.* at *6 (quote and citation omitted).  However, "each defendant's contacts with the forum State must be assessed individually . . . 'The requirements of *International Shoe* [*Co v. Washington*, 326 U.S. 310 . . . (1945)] . . . must be met as to each defendant over whom a state court exercises jurisdiction."  *Id.* at *6, *quoting Calder v. Jones*, 465 U.S. 783, 790 (1984).  Because Plaintiff has failed to allege a shred of factual basis for asserting personal jurisdiction over either Mr. or Mrs. McMahon, all claims against them must be dismissed.

Plaintiff also appears to allege that the McMahons are subject to the personal jurisdiction of this Court under O.C.G.A. § 9-10-91(3).  This subsection of the Georgia long arm statute allows jurisdiction over a defendant who "[c]ommits a tortious injury in this state caused by an act or omission outside this state **if** the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." O.C.G.A. § 9-10-91(3) (emphasis added).  Again simply regurgitating this language, the Complaint alleges in paragraph 6 that "[t]he

McMahons have engaged in acts and omissions outside the state of Georgia that caused tortious injury within this state.  The McMahons regularly do business in as well as solicit business within this state.   The McMahons derive substantial revenue from goods and services rendered within this state."

Once more, Plaintiff plainly fails to carry his burden of establishing the Court's jurisdiction over Mr. and Mrs. McMahon.   As described above, the Complaint is devoid of any factual allegations that Mr. or Mrs. McMahon had any contacts with Georgia whatsoever, much less allegations that would allow this Court to determine that either McMahon, "**<u>as an individual</u>**, 'regularly does or solicits business, or engages in any other persistent course of conduct'" in Georgia as would be required to satisfy the third prong of Georgia's long arm statute. *Canty*, 736 F. Supp. 2d at 1361 (emphasis added).  Instead, Plaintiff relies solely on conclusory averments of personal jurisdiction that do no more than slavishly recite the language of the long arm statute.  Such "bare assertions," devoid of any factual enhancement, are wholly insufficient to survive a Rule 12(b)(2) challenge to personal jurisdiction.  *See Gerber Garment Tech.,* 699 F. Supp. at 1579 n. 1 ("mere conclusory statements cannot be relied upon to establish the prima facie case on the issue of personal jurisdiction"); *Nationwide Mut. Fire Ins. Co.*, 2011 WL 4017874, at *4 ("bare assertions, without any factual or legal basis, are

10

insufficient to support a finding of personal jurisdiction").  All claims against Mr. and Mrs. McMahon, therefore, must be dismissed.

**B.      The McMahons Have Not Been Properly Served with the Complaint, Which Mandates Dismissal Pursuant to Fed. R. Civ. P. 12(b)(4)**

Although WWE was served in this action through its registered agent in Georgia, neither Mr. nor Mrs. McMahon personally have been served with the summons or Complaint.  Because Plaintiff failed to properly serve the McMahons individually, this Court lacks personal jurisdiction over them.  *See*, *e.g.*, *Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 849 (11th Cir. 1988) (where service is not properly made on out-of-state individual defendant, he must be dismissed from the litigation); *Madgett v. Citigroup*, No. 1:10-CV-02796-TWT-GGB, 2011 WL 6371885, at *2 (N.D. Ga. Nov. 9, 2011), *report and recommendation adopted*, 2011 WL 6371875 (N.D. Ga. Dec. 19, 2011) ("Because there is no record of service of process upon [defendant], the Court lacks personal jurisdiction over [defendant]. Accordingly, the claims against [defendant] must be dismissed."); *Ogburn v. Chase Home Fin.*, LLC, No. 1:11-CV-1856, TWT, 2011 WL 5599150, at *1  (N.D. Ga. Nov. 16, 2011) (*quoting Omni Capital Int'l, Ltd v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) for the proposition that "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural

requirement of service of summons must be satisfied.").   As such, the claims against Mr. and Mrs. McMahon must be dismissed.

**C.**     **The Complaint Should be Dismissed in Its Entirety Pursuant to Fed. R. Civ. P. 12(b)(6) for Failure to State Claims Upon Which Relief Can Be Granted**

Even if Plaintiff could somehow overcome the fatal jurisdictional defects to his claims against the McMahons individually, the Complaint nonetheless should be dismissed in its entirety for failure to state claims upon which relief can be granted.

A plaintiff's factual allegations must be sufficient "to state a claim to relief that is plausible on its face," so that groundless claims that do not entitle a party to relief can "be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. v. Twombly*, 550 U.S. 544, 558, 570 (2007) (quote and citation omitted).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of

'further factual enhancement.'"  *Id.*, *quoting Twombly*, 550 U.S. at 557.  The Court is not to give any weight to conclusions pled in a complaint, which are "not entitled to the assumption of truth."  *Id.* at 1951.  Plaintiff's Complaint is woefully deficient under these governing standards.[1]

### 1.   The Allegations are Insufficient to Establish the Direct Participation Required to Name Individual Corporate Officers for the Alleged Torts of the Corporation

It is black letter law that the chief officers of a corporation do not incur personal liability for alleged wrongs by the corporate entity merely because of their official corporate positions.  *See*, *e.g.*, *Schribner v. O'Brien*, 363 A.2d 160, 168 (Conn. 1975) ("an officer of a corporation does not incur personal liability for its

---

[1]   A federal court exercising federal question jurisdiction applies federal common law rules to determine which state's law to apply to state law claims.  *See*, *e.g.*, *Edelmann v. Chase Manhattan Bank, N.A.*, 861 F.2d 1291, 1294 n.14 (1st Cir. 1988) ("When jurisdiction is not based on diversity of citizenship, choice of law questions are appropriately resolved as matters of federal common law."); *Piamba Cortes v. Am. Airlines, Inc.*, 177 F.3d 1272, 1296 n. 19 (11th Cir. 1999) (noting appropriate application of federal common law conflict of law rules where case was removed under federal question jurisdiction).  Federal courts have adopted the "most significant relationship test" found in the Restatement (Second) of Conflict of Laws for this purpose.  *See Piamba Cortes*, 177 F.3d at 1296 n. 19.  However, a conflicts analysis is only necessary where a *bone fide* conflict exists between the potentially-applicable state law.  *See Piamba Cortes*, 177 F.3d at 1296 (noting District Court's application of "most significant relationship test" only after a conflict of laws problem was identified).  Here, the relevant substantive law of the states potentially at issue – Georgia and Connecticut – are materially the same. For the Court's convenience, precedent from both states is cited herein.

torts merely because of his official position"); *Ceasar v. Shelton*, 596 S.E. 2d 755, 756 (Ga. App. Ct. 2004); *Litland v. Smith*, 543 S.E. 2d 468, 469 (Ga. App. Ct. 2000) ("the mere operation of a corporate business does not render one personally liable for corporate acts. . . [i]nsulation from liability is an inherent purpose of incorporation.") (internal quotes and citations omitted).  The laws of Connecticut and Georgia could not be clearer that a corporate officer cannot be sued on such nebulous assertions as are made here that the officers have "ultimate responsibility" for all corporate actions.  Indeed, if only "ultimate responsibility" were required, a plaintiff could <u>always</u> sue the chairman and CEO in every suit against a corporation for any alleged tort of the corporation.

Instead, an officer can only be personally liable for a corporation's alleged torts if he or she "specifically directed the particular act to be done or participated or cooperated therein."  *Caesar*, 596 S.E. 2d at 756, *quoting Cherry v. Ward*, 420 S.E. 2d 763 (Ga. App. Ct. 1992); *Schribner*, 363 A.2d at 168 (corporate officer must affirmatively "commit[] or participate[] in the commission of a tort" to be personally liable).  Such liability is "'dependent upon separate evidence of **direct participation** in the tort.'"  *Beasley v. A Better Gas Co.*, 604 S.E.2d 202, 206 (Ga. App. Ct. 2004), *quoting Speir v. Krieger*, 509 S.E. 2d 684 (Ga. App. Ct. 1998) (emphasis added).  Thus, to survive a motion to dismiss, the plaintiff "must allege

14

facts setting forth the nature of the individual's participation." *Valentine v. Nat'l Sports Servs.,* No. 3:03CV153DJS, 2005 WL 1185800, at *3 (D. Conn. May 18, 2005) (quote and citation omitted); *see also generally In re Friedman's, Inc. Sec. Litig.*, 385 F. Supp. 2d 1345, 1374 (N.D. Ga. 2005) (plaintiffs failed to state a claim against individual defendant in securities litigation context where plaintiffs did not allege facts demonstrating individual defendant's control or influence over particular policies or practices).

Here, Plaintiff has utterly failed to allege any facts regarding how Mr. or Mrs. McMahon supposedly personally participated in the tortious activity alleged in the Complaint.  Rather, he apparently attempts to impute participation in **all** marketing decisions to Ms. McMahon "[a]s the WWE officer ultimately responsible for DVD marketing."  Complaint, ¶ 27.  Alleging only in conclusory fashion that as CEO she has "been recognized as having personal control over WWE's disparate business dealings, including DVD marketing," "had overall responsibility for WWE's marketing efforts," and was "ultimately responsible for DVD marketing," the Complaint nowhere alleges any specific facts regarding anything Mrs. McMahon supposedly did relative to Plaintiff or the DVDs at issue.

As regards Mr. McMahon, the allegations are even more scant.  Mr. McMahon is simply lumped together with Mrs. McMahon or WWE in generalized

allegations throughout the Complaint with no explanation or differentiation of Mr. McMahon's purported role in the facts of this case.

These allegations are plainly insufficient to establish personal participation by an officer of a corporation.  As noted above, such conclusory allegations and unwarranted deductions of fact do not constitute well-pled allegations and need not be admitted as true in adjudicating a motion to dismiss.  *See*, *e.g.*, *Iqbal*, 129 S. Ct. 1937; *Twombly*, 550 U.S. 544.  The Complaint, therefore, lacks factual allegations against the McMahons of personal participation in the pled torts sufficient to withstand a motion to dismiss.

Regardless, for all the reasons demonstrated in WWE's MTD Brief, WWE has committed no tort in the first place.  WWE has the right to release DVDs which contain footage of Plaintiff's recorded performances.  WWE's right to use its copyrighted works and Somerson's name and likeness in its DVDs is protected not only by federal copyright law, but also by the First Amendment.  Plaintiff's claims disregard WWE's copyrights and the First Amendment rights regarding Plaintiff and his history with WWE wrestlers, and simply ignore controlling First Amendment principles which vest all people with the right to speak of Plaintiff and his life.  Thus, no "tortious actions" exist.  If the acts complained of are not tortious, by definition there can be no "direct participation" in tortious activity.

### 2.   The Negligent Supervision Claim Against the McMahons Independently Fails As A Matter of Law

By this Count, Plaintiff claims that an alleged "failure to properly supervise" on the part of the McMahons caused WWE to use Mr. Somerson's name and likeness for commercial purposes. *See* Complaint, ¶¶ 53-57.  As demonstrated in WWE's MTD Brief, WWE has the right to use Plaintiff's name and likeness in products containing copyrighted footage of his performances.

Moreover, Plaintiff cannot circumvent well-established law protecting corporate officers from suits sounding in negligence filed by third parties.  A third party cannot use a theory of "negligent supervision" to sue an individual <u>employee</u>. Instead, the negligent supervision theory may justify joining the <u>corporation</u> or <u>employer</u> as a defendant on account of its failure to supervise an <u>employee</u> who then does harm to a third party.  *See Chylinski v. Bank of Am., N.A.*, 630 F. Supp. 2d 218, 222 (D. Conn. 2009) (citing cases for the proposition that only an employer may be directly liable for the negligent supervision of an employee); *Echevarria v. Five Star Supermarkets of New London, Inc.*, No. CV106003675S, 2011 WL 6934775, at *5 (Conn. Super. Ct. Dec. 7, 2011) ("Under Connecticut law, an **employer** may be held liable for the negligent supervision of employees.") (quote and citation omitted); *Canty v. Fry's Elecs., Inc.*, 736 F. Supp. 2d 1352, 1379 (N.D. Ga. 2010) (Under Georgia law, a claim for negligent supervision

"arises when an **employer** negligently . . . supervises an **employee** and that employee subsequently harms the plaintiff.") (emphasis added); *Farrell v. Time Serv., Inc.*, 178 F. Supp. 2d 1295, 1300 (N.D. Ga. 2001) (same); *Novare Group, Inc. v. Sarif*, 718 S.E. 2d 304, 309 (Ga. 2011) (dismissing negligent supervision claim where plaintiff failed to sufficiently allege facts showing that "the **employer** reasonably knew or should have known of an **employee's** tendencies to engage in certain behavior . . .") (quote and citation omitted) (emphasis added).   Plaintiff attempts to improperly turn this law on its head by seeking to hold an individual employee of WWE – Mr. or Mrs. McMahon – liable for failure to supervise the corporation.   This is a fundamental misapplication of the negligent supervision cause of action.

Second, as with all negligence cases, Plaintiff must plead facts establishing that the McMahons owed a duty of care to Plaintiff to ensure that his name and likeness were not used in copyrighted products containing his recorded performances belonging to WWE.  *See, e.g., Chylinski*, 630 F. Supp. 2d at 221 (A claim for negligent supervision, "like all negligence claims, requires allegations of a duty to the plaintiff, a breach by the defendant of that duty, and that the breach caused damages to the plaintiff."); *Echevarria*, 2011 WL 6934775, at *5 ("In order to plead a cause of action sounding in negligent supervision, a plaintiff must plead

injury by an employee whom the defendant had a duty to supervise, failed to supervise and whom the defendant knew or should have known would cause the injury.") (quote and citations omitted); *Alexander v. A. Atlanta Autosave, Inc.*, 611 S.E. 2d 754, 758 (Ga. App. Ct. 2005) (A "plaintiff must ... show a duty, a breach of that duty, causation, and damages." Absent all of these elements, claims for negligence and negligent supervision fail.) (quote and citation omitted). No such duty is alleged, and none exists.  Plaintiff's negligent supervision claim, therefore, fails as a matter of law.

        To survive a motion to dismiss a negligent supervision claim, a plaintiff must also affirmatively allege facts that demonstrate an employer knew or should have known that the employee who caused injury had a propensity or tendency towards the type of tortious conduct alleged to have harmed the plaintiff.  *See Echevarria*, 2011 WL 6934775, at *5 (striking negligent supervision count where plaintiff failed to allege that employer "knew or should have known of [employee's] propensity" for alleged tortious conduct); *Canty*, 736 F. Supp. 2d at 1379 ("To establish [a negligent supervision] claim, the plaintiff must allege, and ultimately prove, that the defendant knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff."); *Novare Group*, 718 S.E. 2d at 309, *quoting Leo v. Waffle House,*

*Inc.*, 681 S.E.2d 258 (Ga. App. Ct. 2009) ("For an employer to be held liable for negligent supervision, there must be 'sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff.'").

Plaintiff here makes no such allegations regarding any "propensity" or "tendency" of WWE employees to misappropriate names and likenesses for commercial purposes or the McMahons' knowledge of such propensities. Rather, in this case, Plaintiff alleges only that the McMahons' "failure to properly supervise caused **WWE** to tortiously use Mr. Somerson's name." Complaint, ¶ 56 (emphasis added). A corporation, by definition, cannot have "propensities" or "tendencies" to do anything. Moreover, even if the Complaint can be read to state that it is WWE's employees who allegedly used Mr. Somerson's name, the failure to allege any propensity on the employees' part to "tortiously use" the names and likenesses of others, or that the McMahons knew of any such alleged tendencies, is fatal to Plaintiff's claim for negligent supervision, which should be dismissed on that basis.

Finally, as demonstrated through this Memorandum and WWE's MTD brief, Plaintiff's negligent supervision claim must fail because there is no underlying tort

from which such a cause of action may derive.  *See Canty*, 736 F. Supp. 2d at 1379

-80 (claims for negligent supervision are "derivative of an underlying tort claim"

and should be dismissed where there is no underlying tort).  Because WWE has the

right to use the footage containing Plaintiff's performances as "Pretty Boy" Doug

Somers, no tortious activity has occurred, and therefore, no underlying tort claim

exists.  As such, Plaintiff's claim for negligent supervision should be dismissed

with prejudice.

## IV.  **CONCLUSION**

For the foregoing reasons, and those set forth in WWE's MTD Brief, this

Court should dismiss the Complaint in its entirety with prejudice.

Respectfully submitted this 1st day of February, 2012.

*s/ Otto F. Feil*
Otto F. Feil
Georgia Bar No. 257288
ofeil@tfhlegal.com
Cheralynn M. Gregoire
Georgia Bar No. 309760
cgregoire@tfhlegal.com
TAYLOR, FEIL, HARPER,
  LUMSDEN & HESS, P.C.
3340 Peachtree Road NE, Suite 250
Atlanta, Georgia  30326
404-214-1200
404-214-1201 Fax

<u>Of Counsel</u>:
Jerry S. McDevitt
jerry.mcdevitt@klgates.com
Curtis B. Krasik
curtis.krasik@klgates.com
Blair T. Preiser
blair.preiser@klgates.com
K&L GATES LLP
K&L Gates Center
  210 Sixth Avenue
  Pittsburgh, Pennsylvania  15222
(412) 355-6500
(412) 355-6501 Fax

**ATTORNEYS FOR
DEFENDANTS**

I hereby certify that the foregoing **Memorandum of Law in Support of Motion to Dismiss by Vincent K. and Linda E. McMahon** was prepared using 14-point Times New Roman font in accordance with L.R. 5.1.

*s/ Otto F. Feil*
Otto F. Feil
Georgia Bar No. 257288
ofeil@tfhlegal.com
TAYLOR, FEIL, HARPER,
 LUMSDEN & HESS, P.C.
3340 Peachtree Road NE, Suite 250
Atlanta, Georgia  30326
404-214-1200
404-214-1201 Fax

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DOUGLAS DUANE SOMERSON,   )
                                )
      Plaintiff,          )
                                )     Civil Action
v.                          )
                                )     File No. 1:12-cv-00043-MHS
VINCENT K. McMAHON; LINDA   )
E. McMAHON; and WORLD        )
WRESTLING ENTERTAINMENT,   )
INC.,                          )
                                )
      Defendants.     )
_____  )

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2012, I caused the foregoing

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY**

**VINCENT K. AND LINDA E. McMAHON** to be electronically filed with the

Clerk of Court using the CM/ECF system, which will automatically send e-mail

notification of such filing to the following attorney of record:

                 Edward Mark Gilgor, Esq.
                 P. O. Box 17505
                 Atlanta, GA  30316

This 1st day of February, 2012.

                 */s/ Otto F. Feil*
                 Counsel for Defendants
                 Georgia Bar No. 257288