UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DOUGLAS DUANE SOMERSON,          :

    Plaintiff,                              :

                                       CIVIL ACTION NO.

v.                                              :

                                         1:12-CV-00043-MHS

VINCENT K. MCMAHON, LINDA      :
E. MCMAHON, and WORLD
WRESTLING ENTERTAINMENT,      :
INC.,

                                     :

    Defendants.                             :

                                     :

## ORDER

This case is before the Court on defendants' motions to dismiss.  The

Court's rulings and conclusions are set forth below.

Background

On November 28, 2011, plaintiff Douglas Duane Somerson filed a

complaint against World Wrestling Entertainment, Inc. ("WWE"), Vincent

McMahon, and his wife Linda McMahon ("the McMahon defendants"), in the

Superior Court of Fulton County, Georgia.  Plaintiff alleged the following

claims against defendants: (1) invasion of privacy; (2) unauthorized use of

intellectual property; (3) unjust enrichment; (4) violation of the Georgia Uniform Deceptive Trade Practices Act ("GUDTPA"), O.C.G.A. § 10-1-372; (5) violation of right of publicity; and (6) negligent supervision. In sum, plaintiff, a professional wrestler, alleges that defendants have used his name and likeness in certain merchandise without paying plaintiff any royalties and without his consent or authorization.

On January 5, 2012, defendants removed this action to this Court on the basis of federal question jurisdiction. Defendants asserted in their notice of removal that plaintiff's claims were completely preempted by federal copyright law and therefore arose under federal law for purposes of federal question jurisdiction. On February 1, 2012, the McMahon defendants and WWE each filed a motion to dismiss plaintiff's claims.

On June 26, 2012, the Court issued an Order inquiring sua sponte whether it had subject matter jurisdiction in this case and directed the parties to file supplemental briefs on the issue. The parties have now done so. Plaintiff states in his response to the Court's Order that he is seeking at least $75,000 in damages, and therefore, agrees with defendants' assertion

2

that diversity jurisdiction is supported by his claim. The Court has already found that there is complete diversity among the parties. Accordingly, based on plaintiff's admission, the Court finds that it has diversity jurisdiction. See 28 U.S.C. § 1332(a). The Court now addresses defendants' motions to dismiss.

Discussion

I. McMahon Defendants' Motion to Dismiss

The McMahon defendants move to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(2), (4), and (6), due to a lack of personal jurisdiction, insufficient process, and failure to state a claim upon which relief could be granted. The Court addresses personal jurisdiction and insufficient process before reaching defendants' arguments for dismissal for failure to state a claim because a "defendant that is not subject to the jurisdiction of the court cannot be bound by its rulings." See Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 940 (11th Cir. 1997).

The McMahon defendants argue that plaintiff has failed to plead sufficient facts in the complaint to establish the Court's personal jurisdiction

over them. The McMahon defendants point out that plaintiff has alleged in the complaint that they are both domiciled in Connecticut. The McMahon defendants contend that the complaint fails to specify the particular section of Georgia's long arm statue that is applicable or make any factual allegations to support jurisdiction. The McMahon defendants assert that it appears to them plaintiff intends to allege jurisdiction under O.C.G.A. § 9-10-91(1) and/or (3). Under either § 9-10-91(1) or (3), defendants argue that plaintiff fails to allege (1) a single contact with Georgia by either Mr. or Mrs. McMahon, (2) any business transacted in the state by the McMahon defendants in their individual capacities; or (3) allegations that would allow the Court to determine that either McMahon as an individual regularly does or solicits business, or engages in any other persistent course of conduct in Georgia. Instead, the McMahon defendants contend that plaintiff relies on conclusory statements that do nothing more than recite the statutory language. Additionally, the McMahon defendants argue that even if WWE transacts business in Georgia, either McMahon defendant's status as a current or former corporate executive does not automatically confer jurisdiction over them.

4

Plaintiff bears the burden of establishing a prima facie case of jurisdiction over a non-resident defendant. See Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988). Plaintiff establishes such a case by presenting sufficient evidence to defeat a motion for a directed verdict. Id.

Plaintiff did not respond to the McMahon defendants' arguments that the Court lacks personal jurisdiction over them. Therefore, plaintiff has failed to establish a prima facie case of jurisdiction. The Court agrees with the McMahon defendants' arguments and reasoning that personal jurisdiction over them is lacking in this case.

The McMahon defendants also move to dismiss plaintiff's complaint for insufficient process pursuant to Fed. R. Civ. P. 12(b)(4). They contend that although WWE was served through its registered agent in Georgia, neither of the McMahon defendants has been served personally with the summons or complaint. Therefore, defendants argue that because plaintiff failed to

serve them individually, the Court lacks personal jurisdiction over them and dismissal is warranted.[1]

The Court is required to dismiss a complaint or order that service be made within a specified time when a defendant is not served within 120 days after the complaint is filed. FED. R. CIV. P. 4(m). If a plaintiff shows good cause for the failure to serve, the Court must extend the time for service for an appropriate period. Id.

Plaintiff did not respond to the McMahon defendants' arguments regarding insufficient process. Plaintiff has not shown good cause for the failure to serve the McMahon defendants. Additionally, plaintiff has not filed proof of service with regard to the McMahon defendants. See FED. R. CIV. P. 4(l)(1).

---

[1] The McMahon defendants address their argument as "insufficient process" pursuant to Rule 12(b)(4). However, it is clear from their argument that they are proceeding under Rule 12(b)(5) and arguing for dismissal based on insufficient service of process.

Therefore, the Court dismisses this action against the McMahon defendants for lack of personal jurisdiction and insufficient service of process. The McMahon defendants have requested that dismissal be with prejudice. However, a dismissal for lack of personal jurisdiction or insufficient service of process is without prejudice. See FED. R. CIV. P. 4(m); Jackson v. Warden, FCC Coleman-USP, 259 Fed. App'x 181, 182-83 (11th Cir. 2007) (finding that the case should have been dismissed without prejudice for failure to serve, and therefore, it was improper for the court to have reached the merits and issued dismissal with prejudice); Republic of Panama, 119 F.3d at 940. Accordingly, the Court grants the McMahon defendants' motion to dismiss and dismisses this case against them without prejudice, including plaintiff's claim for negligent supervision, which is alleged only against the McMahon defendants and not WWE.

II. WWE's Motion to Dismiss

WWE moves to dismiss plaintiff's claims with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted. Plaintiff's claims against WWE are (1) invasion of privacy; (2)

unauthorized use of intellectual property; (3) unjust enrichment; (4) violation of GUDTPA, O.C.G.A. § 10-1-372; and (5) violation of a right of publicity.

### A. Legal Standard

Under both <u>Twombly</u> and <u>Ashcroft</u>, the Court is required to accept well-pleaded facts, not legal conclusions, as true when considering a motion to dismiss. <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-50 (2009); <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (internal quotations and citations omitted). Instead, the complaint must set forth factual allegations "plausibly suggesting (not merely consistent with)" a violation of the law. <u>Id.</u> at 557.

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" Ashcroft, 129 S. Ct. at 1949 (quoting Twombly, 550

U.S. at 570). The Ashcroft court explained as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

129 S. Ct. at 1949 (internal quotes and citations omitted).

"Determining whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing court to draw

on its judicial experience and common sense." Id. at 1950 (citation omitted).

"But where the well-pleaded facts do not permit the court to infer more than

the mere possibility of misconduct, the complaint has alleged – but it has not

'show[n]' – 'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P.

8(a)(2)). In further clarifying the Twombly standard, the Supreme Court has

adopted a two-pronged approach to evaluating motions to dismiss: (1)

eliminate any allegations in the complaint that are merely legal conclusions,

and (2) where there are well-pleaded factual allegations, "assume their

9

veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft, 129 S. Ct. at 1950.

### B. Facts

Accepting the well-pleaded facts in plaintiff's complaint as true, plaintiff alleges that he is a highly successful professional wrestler and entertainer who began working as a professional wrestler in 1967. He has worked under the name and persona "'Pretty Boy' Doug Somers," and he has invested years of his life developing and maintaining this persona. Compl. ¶ 10. The persona of "Pretty Boy" Doug Somers is known and loved world wide by professional wrestling fans. In working as a professional wrestler, he has suffered numerous injuries including several broken bones and numerous concussions. Despite these injuries, he continues to work as a wrestler today in order to generate income.

Plaintiff has never entered into any agreement with WWE, the McMahon defendants, or any predecessor entity with regard to the right to use his name and/or likeness. He alleges that WWE has repeatedly used his name and likeness for its own commercial gain without his permission and

without compensating him.  Plaintiff asserts that WWE has released DVDs, books, dolls, and other commercial products including WWE Classics on Demand Video Channel and DVDs such as the *Shawn Michaels Story: Heartbreak and Triumph*.  Certain DVDs are currently for sale, including online at websites owned or controlled by defendants.  DVDs containing footage of plaintiff unfairly and deceptively suggest to the public that plaintiff approves of such distributions.  Plaintiff has never received any royalties from WWE, despite WWE's world wide sales of merchandise using his name and likeness.  Plaintiff alleges that the failure to even attempt to contact plaintiff to obtain the right to use his name and likeness as well as the failure to make any attempt to compensate him demonstrates bad faith and malice by WWE.

### C. Invasion of Privacy and Right of Publicity

In Count I of his complaint, plaintiff alleges that defendants have invaded his privacy by repeatedly using his name and likeness without his permission.  In Count V of his complaint, plaintiff asserts that defendants have violated his right to publicity by repeatedly appropriating his name and

likeness for a commercial purpose and benefitted therefrom without his permission.

In its motion to dismiss, WWE argues that plaintiff's claims for a violation of his right of publicity and an invasion of his privacy, although separate causes of action, do not have substantive differences, and instead they both boil down to a claim of misappropriation. Accordingly, WWE addresses the claims together.

The Court agrees with WWE's argument. As recognized by this Court, "[t]here is no substantive difference between the interests protected by the common law 'right of publicity' and the interests protected by the appropriation prong of the invasion of privacy tort." Thoroughbred Legends, LLC v. The Walt Disney Co., 1:07-CV-1275-BBM, 2008 WL 616253, at *11 n.13 (N.D. Ga. Feb. 12, 2008). Instead, as the Georgia Supreme Court has explained, the difference depends on whether the person is a private citizen or a public figure: "We conclude that while private citizens have the right of privacy, public figures have a similar right of publicity." Martin Luther King, Jr., Ctr. for Soc. Change, Inc. v. Am. Heritage Products, Inc., 250 Ga. 135, 143

(1982). Plaintiff alleges in his complaint that he is a "highly successful professional wrestler and entertainer," he has "invested years of his life developing and maintaining the wrestling persona of 'Pretty Boy' Doug Somers," and this persona is "known and loved world wide by Professional Wrestling Fans." Compl. ¶¶ 8, 15, 16. Therefore, plaintiff contends that he is a public figure. Accordingly, the Court will address plaintiff's claims for an invasion of privacy and right to publicity together, referring to them both as a violation of a right to publicity.

WWE makes several arguments as to why plaintiff's claim for a violation of a right to publicity should be dismissed. First, WWE argues that plaintiff has failed to meet the standards of <u>Ashcroft</u> and <u>Twombly</u> because plaintiff makes conclusory statements to support his claims in his complaint. Second, WWE alleges that plaintiff consented to being recorded. WWE explains that plaintiff wrestled for the American Wrestling Association ("AWA"). His performances were recorded by the AWA, and AWA owned this footage and the copyrights therein. WWE asserts that plaintiff did not allege in his complaint that he did not consent to AWA recording his performances, he did not claim any copyright ownership in the AWA footage, and he did not

contend that he was not compensated by the AWA for his performances. WWE continues that in 2003, WWE purchased the AWA film library and all copyrights thereto, including the copyrights in, and to, footage containing plaintiff's performances. According to WWE, the alleged use of plaintiff's name and likeness involves the footage that WWE obtained from AWA.

Third, WWE asserts that the only use of plaintiff's name and likeness involves public wrestling activities, and therefore, plaintiff cannot consent to perform in public and be recorded and later claim that distribution of copyrighted materials of his public performances violate his right to publicity. Fourth, WWE contends that plaintiff's right to publicity claim fails because any footage of plaintiff in the DVDs is used as part of a truthful retelling of past events, which is properly the subject of public interest and therefore protected by the First Amendment. Finally, WWE argues that plaintiff's claim for violation of his right to publicity is preempted by the Copyright Act.

In response, plaintiff argues that he has met the standard for Ashcroft and Twombly by making factual allegations to support his claims, explaining how WWE has violated his rights, and detailing the manner in which WWE

14

has done so. He contends that WWE's assertion that he consented to being recorded and was paid for said recordings is not supported by any facts in his complaint. As for WWE's allegation that plaintiff's claim is preempted by the Copyright Act, plaintiff contends that WWE has relied on facts outside of the complaint for its argument, namely facts related to AWA and copyrights, thereby turning its motion to dismiss into a motion for summary judgment. Plaintiff argues that WWE has failed to produce any evidence or support for the factual statements in its motion, and specifically no evidence of a valid ownership in any copyrights to the video recordings of plaintiff. He contends that WWE has not provided any proof that it purchased copyrighted video recordings from AWA or that AWA transferred any copyrights to WWE. Plaintiff asserts that before the Court entertains any motion based on WWE's unsupported allegations, WWE be required to produce the admissible evidence to support its claims so that plaintiff may have a chance to examine the copyrights and transfers. Finally, plaintiff avers that WWE has implicitly raised the defense that plaintiff was either an employee or an independent contractor at the time the recordings of plaintiff were made. He asks that the Court stay a ruling on WWE's motion to dismiss or motion for summary judgment until plaintiff has engaged in discovery.

15

The Court will first address whether plaintiff's claim for a violation of his right to publicity is preempted by the Copyright Act. The Copyright Act expressly preempts

> legal or equitable rights [under state law] that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103.

17 U.S.C.A. § 301(a). The Eleventh Circuit has recognized a two-part test to be applied in copyright preemption cases. Lipscher v. LRP Publ'ns, Inc., 266 F.3d 1305, 1311 (11th Cir. 2001). "Preemption occurs if the rights at issue (1) fall within the subject matter of copyright set forth in sections 102 and 103 and (2) are equivalent to the exclusive rights of section 106." Id. (quotations omitted).

Under the first prong, the video recordings of plaintiff's wrestling activities fall within the subject matter of copyright. Section 102 states that copyright protection subsists in original works of authorship fixed in any tangible medium of expression. Works of authorship include "motion pictures and other audiovisual works." 17 U.S.C. § 102. Plaintiff has not contested that the video recordings are motion pictures or other audiovisual works.

Additionally, section 103 states that the subject matter of copyright as specified in section 102 includes compilations and derivative works. A "compilation" is defined as a "work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as whole constitutes an original work of authorship." 17 U.S.C. § 101. The video recordings of plaintiff wrestling are part of a larger audiovisual work showing other wrestling matches and commentary throughout different time periods. Therefore, the video recordings of plaintiff are at a minimum audiovisual works falling within section 102 or part of a compilation as defined by section 103.

There is no copyright in the actual wrestling performance by plaintiff. Instead, the broadcast or recording of the wrestling match is the subject of copyright protection. See Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 847 (2d Cir. 1997). The legislative history of the Copyright Act demonstrates that Congress considered the video recording to be the work entitled to copyright protection:

> When a football game is being covered by four television cameras, with a director guiding the activities of the four cameramen and choosing which of their electronic images are

17

> sent out to the public and in what order, there is little doubt that
> what the cameramen and the director are doing constitutes
> 'authorship.'

H.R. No. 94-1476 at 52, reprinted in 1976 U.S.C.C.A.N. at 5665.

The Second Circuit has examined the issue of whether an athletic event is copyrightable and concluded that it is not. Nat'l Basketball Ass'n, 105 F.3d at 845-47. The Second Circuit explained that any "authorship" in a sports event must be open to being copied if fans are to be attracted. Id. at 846. Additionally, the number of joint copyright owners would be numerous, including the athletes, teams, umpires, stadium workers, and even fans who contribute to the work. Id. Finally, the fact that Congress chose to give copyright protection to recorded broadcasts of live sports events but did not extend this protection to the events themselves confirmed for the Second Circuit that the events themselves are not copyrightable. Id. at 847; see also 1-2 M. Nimmer & D. Nimmer, NIMMER ON COPYRIGHT § 2.09[F](2012) (finding that the athletic event itself is not subject to copyright protection).

The Court agrees with the Second Circuit's reasoning. The video recordings are not purely factual information which any wrestling patron

could acquire from the arena without any involvement from the director, the cameramen, or others who contribute to the originality of the recording. Instead, the DVDs contain wrestling performances, referee actions, commentary, different camera angles, and fan involvement. Therefore, the Court concludes that it is the video recordings of plaintiff's wrestling performance that meet the subject matter requirement. See Nat'l Basketball Ass'n, 105 F.3d at 849.

Turning to the second prong, plaintiff's state law claim for a violation of his right to publicity must encompass rights which are equivalent to the exclusive rights of section 106. The Eleventh Circuit has explained this test as follows:

> As this circuit has recognized, the Copyright Act preempts only those state law rights that may be abridged by an act which, in and of itself, would infringe one of the exclusive rights provided by federal copyright law. The exclusive rights under the Copyright Act include the right to reproduce the copyrighted work, to prepare derivative works, and to distribute copies to the public. We employ an extra element test such that if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created case of action, then the right does not lie within the general scope of copyright and there is no preemption.

Lipscher, 266 F.3d at 1311-12 (internal citations and quotations omitted). Therefore, the Court must determine whether the state law claim for a violation of plaintiff's right to publicity requires an extra element instead of, or in addition to, the acts of reproduction, performance, distribution, or display.

WWE argues that plaintiff consented to having his performance reduced to a tangible medium in an audiovisual work, and therefore his claims for misappropriation of his name and likeness and a right of publicity based solely on the reproduction or distribution of that copyrighted work are preempted by the Copyright Act. WWE cites to several cases that it contends supports its position. Plaintiff did not respond to WWE's argument specifically or address the Lipscher test.

A claim for a violation of a right to publicity under Georgia law protects against "the appropriation of another's name and likeness . . . without consent and for the financial gain of the appropriator . . . whether the person whose name and likeness is used is a private citizen, entertainer, or . . . a public figure who is not a public official." Toffoloni v. LFP Publ'g Group, LLC,

572 F.3d 1201, 1205 (11th Cir. 2009) (quoting Martin Luther King, Jr., Ctr.

for Soc. Change, Inc., 250 Ga. at 143). "The right of publicity may be defined

as [an individual's] right to the exclusive use of his or her name and likeness."

Toffoloni, 572 F.3d at 1205 (quoting Martin Luther King, Jr., Ctr. for Soc.

Change, Inc., 250 Ga. at 143).

The Court concludes that there is no extra element required by Georgia

law for a violation of a right to publicity that would remove plaintiff's claim

from the general scope of copyright. A violation of a right to publicity is

based on plaintiff's exclusive use of his or her name and likeness. See Martin

Luther King, Jr., Ctr. for Soc. Change, Inc., 250 Ga. at 143. The "use" by

WWE of plaintiff's name and likeness as alleged in plaintiff's complaint is the

world wide sales of WWE wrestling recordings for commercial gain, the

release of DVDs, and the selling of DVDs online at websites owned or

controlled by WWE. In his response brief, plaintiff alleges that WWE has "no

right to be selling video recordings of him working as a professional wrestler."

Pl.'s Response Brief at 4. Thus, plaintiff's complaints are based on WWE

reproducing the video recordings depicting him, preparing derivative works

based on the video recordings of him, and distributing copies of these video

21

recordings to the public, all of which are encompassed by copyright law. Plaintiff has not argued that there is an extra element required by Georgia law, and the Court has found none. Accordingly, plaintiff's claims for a violation of his right to publicity and an invasion of his privacy are preempted by the Copyright Act. See Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n, 805 F.2d 663, 674 (7th Cir. 1986) (where baseball players contended that broadcasts of baseball games made without their express consent violated their rights to publicity in their performances, holding that copyright law preempted players' rights of publicity in their game-time performances); Blood v. Titan Sports, No. 3:94CV307-P, at *19 (W.D.N.C. May 13, 1997) (where the wrestler plaintiff alleged that the defendants sold and marketed videocassettes by incorporating plaintiff's name and likeness, finding that plaintiff's state law claims were preempted by copyright law because the copyright subsisted in the videotapes themselves and not in the performance by plaintiff and plaintiff sought damages for the unauthorized reproduction or distribution of the tapes);[2] see also Jules Jordan Video, Inc. v. 144942 Canada Inc., 617 F.3d 1146, 1155 (9th Cir. 2010) (where the

---

[2] WWE attached a copy of this case to its Memorandum in Support of its Motion to Dismiss.

defendants copied and sold DVDs owned by the plaintiff's company and featuring the plaintiff's performances, finding that the actor's right of publicity was preempted by the Copyright Act).

Plaintiff argues that WWE has no proof that it owns the copyrights in these recordings, and without such proof, the Court cannot address the issue of copyright preemption. Plaintiff is correct in that WWE has alleged facts outside of the complaint related to AWA, plaintiff's consent to being recorded, and AWA's transfer of copyrights to WWE without offering any evidentiary support for these claims. The Court may not consider such facts because they are not within the four corners of the complaint, plaintiff disputes these facts, and they are not necessarily central to plaintiff's claims. See SFM Holdings, Ltd. v. Banc of Am. Secs., LLC, 600 F.3d 1334, 1337 (11th Cir.2010) (district court may consider evidence in ruling on a motion to dismiss if it is central to the plaintiff's claim and the authenticity is not challenged).

However, the Court has not considered these facts and need not do so in order to rule on WWE's motion to dismiss. The legal rights of the alleged infringer are not relevant in the preemption analysis. Jules Jordan Video,

Inc., 617 F.3d at 1154-55. Thus, whether WWE has a valid copyright to the video recordings of plaintiff – transferred from AWA or otherwise – will not affect whether the state law rights plaintif asserts are equivalent to any of the exclusive rights within the general scope of the copyright. See id. "The question is whether the rights are works of authorship fixed in a tangible medium of expression and come within the subject matter of the Copyright Act. If a plaintiff asserts a claim that is the equivalent of a claim for infringement of a copyrightable work, that claim is preempted, regardless of what legal rights the defendant might have acquired." Id. at 1155.

Moreover, as WWE argues in its reply brief, proof of copyright ownership is not necessary because copyright preemption applies to works that are within the subject matter of copyright, even if the work itself is not copyrightable, i.e., "it is too minimal or lacking in originality to qualify, or because it has fallen into the public domain." See Lipscher, 266 F.3d at 1311 (quoting H.R. REP. No. 94-1476, at 131 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5747). As the Second Circuit has explained, "[c]opyrightable material often contains uncopyrightable elements within it, but Section 301 preemption bars state law misappropriation claims with

24

respect to uncopyrightable as well as copyrightable elements." Nat'l Basketball Ass'n, 105 F.3d at 849. Therefore, the Court may properly find that plaintiff's state law claim for a violation of his right to publicity is preempted without requiring WWE to prove that it owns the copyrights to the video recordings.

As for plaintiff's argument that WWE implicitly raises the defense that plaintiff was either an employee or an independent contractor at the time the recordings of plaintiff were made, the Court finds that WWE has not raised this issue, either implicitly or explicitly, and that this issue is not relevant to the discussion of whether plaintiff's state law claim is preempted by the Copyright Act. See Baltimore Orioles, Inc., 805 F.2d at 674 (discussing work for hire relationship to determine who owned the copyright in the telecasts of baseball games, but ultimately finding that the copyright in the telecasts preempted the right of publicity of baseball players in their game-time performances). Moreover, plaintiff may not claim any ownership in the wrestling performance as an independent contractor or an employee because his performance is not copyrightable, and he has not shown any involvement or authorship with the video recordings. See discussion supra.

Having found that plaintiff's claims for invasion of privacy and right to publicity as they relate to video recordings and DVDs[3] of plaintiff's wrestling performance are preempted by the Copyright Act, the Court need not address WWE's remaining arguments.

D. Unauthorized Use of Intellectual Property.

Plaintiff also alleges in his complaint a claim for "Unauthorized Use of Intellectual Property." Compl. at 5. WWE argues that it is not clear what cause of action plaintiff intends to invoke because no such tort exists under Georgia law. Plaintiff did not respond to WWE's argument.

The Court agrees with WWE that it is unclear what type of claim plaintiff intends to bring. Plaintiff merely alleges in his complaint that defendants have used plaintiff's intellectual property in the WWE merchandise and plaintiff has been damaged by defendants unauthorized use of plaintiff's intellectual property. As plaintiff's wrestling performance is not copyrightable, it is not clear which intellectual property plaintiff is referring

---

[3] See infra for a discussion of plaintiff's claims with regard to other merchandise.

to and the Court has no benefit of argument from plaintiff. Accordingly, the Court dismisses this claim as it is not plausible on its face and does not meet the standard announced in Ashcroft and Twombly.

### E. Unjust Enrichment

In his unjust enrichment claim, plaintiff alleges that WWE never paid royalties to him for the sale of WWE merchandise featuring him and such failure to compensate him constitutes unjust enrichment. WWE contends that plaintiff's unjust enrichment claim must fail because it is an alternative theory of recovery if a contract claim fails, and here there is no contract, either actual, implied, or constructive. Additionally, WWE argues that plaintiff has failed to allege that WWE ever induced or encouraged him to do anything, and therefore, plaintiff has no right to an equitable recovery. Finally, WWE asserts that plaintiff could not have expected WWE would pay him anything because plaintiff performed his wrestling activities for AWA, not WWE. Therefore, WWE contends that plaintiff should expect recovery from AWA, if he has not already been adequately compensated by AWA.

In response, plaintiff argues that he has sufficiently alleged a claim for unjust enrichment because WWE has benefitted from plaintiff's work, there is no contractual agreement between the parties, and plaintiff has not been compensated. Plaintiff asserts that he should be allowed to produce sufficient evidence to establish that WWE should be liable since the video recordings fell outside any contract provisions.

A claim for unjust enrichment is not a separate tort, but an alternative theory of recovery if a contract claim fails. Tidikis v. Network for Med. Commc'ns & Research LLC, 274 Ga. App. 807, 811 (2005). Because plaintiff asserts unjust enrichment as a separate tort claim and not as an alternative theory of recovery for any failed contract, plaintiff's claim must be dismissed. See Wachovia Ins. Servs., Inc. v. Fallon, 299 Ga. App. 440, 449 (2009).

Additionally, the Georgia Court of Appeals has explained the law regarding unjust enrichment as follows:

> The theory of unjust enrichment is basically an equitable doctrine that the benefitted party equitably ought to either return or compensate for the conferred benefits when there was no legal contract to pay. For unjust enrichment to apply either in law or equity, the party conferring the labor and things of

value must act with the expectation that the other will be responsible for the cost. The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received.

Hollifield v. Monte Vista Biblical Gardens, Inc., 251 Ga. App. 124, 130-31 (2001) (quotations omitted).

Here, plaintiff has not alleged in his complaint that he performed his wrestling activities with the expectation that WWE would be responsible for paying him any royalties. Nor has plaintiff alleged that WWE induced, accepted, or encouraged plaintiff to furnish or render wrestling activities, or something else of value, to it and then avoided paying plaintiff. See Morris v. Britt, 275 Ga. App. 293, 294-95 (2005) (finding that unjust enrichment did not authorize any recovery where the plaintiffs acted with the intention of personally benefitting from repairs to a house without any expectation that the defendant would be responsible for the cost). Accordingly, the Court dismisses plaintiff's unjust enrichment claim.

F.  GUDTPA

In his complaint, plaintiff alleges that WWE has violated GUDTPA "by willfully and maliciously engaging in unfair methods of competition and unfair and deceptive acts and practices in trade and commerce by misappropriating" plaintiff's likeness and intellectual property.  Compl. ¶ 44. Plaintiff contends that WWE has engaged or is engaging in the conduct of trade and commerce and has offended public policy as established by common law, and plaintiff has suffered damages as a result.

WWE moves to dismiss plaintiff's GUDTPA claim because plaintiff has only asked for monetary damages but monetary relief is not authorized under GUDTPA.  Instead, WWE argues that remedies under GUDTPA are limited to equitable relief.  Additionally, WWE contends that the complaint does not contain well-pled allegations that would support a finding that WWE violated GUDTPA, lists legal conclusions only, and does not allege any act that would constitute any of the deceptive trade practices listed in O.C.G.A. § 10-1-372.

Plaintiff did not respond to WWE's arguments or address his GUDTPA claim in his response to defendants' motions to dismiss.

The Court finds WWE's reasoning to be correct. Plaintiff may not recover monetary damages under GUDTPA. Akron Pest Control v. Radar Exterminating Co., Inc., 216 Ga. App. 495, 498 (1995) ("It is well established that monetary relief is not authorized under [GUDTPA]; the Act authorizes only equitable relief.") (internal citations omitted). Additionally, plaintiff's GUDTPA claim as alleged in his complaint fails to meet the standards announced in Ashcroft and Twombly, and misappropriating an individual's likeness is not one of the deceptive trade practices listed in § 10-1-372. Therefore, the Court dismisses plaintiff's GUDTPA claim.

G. Other Merchandise

In their briefing regarding dismissal of plaintiff's complaint, the parties have focused on plaintiff's claims with regard to DVDs and video recordings of plaintiff's wrestling activities. However, plaintiff's claims are for WWE using his name and likeness in releasing not only DVDs but also "books, dolls, and other commercial products." Compl. ¶ 19. WWE argues in a footnote in its motion to dismiss that plaintiff has made nothing more than a "naked assertion" about this other merchandise which does not meet the standard under Ashcroft and Twombly. WWE's Mem. in Supp. of Mot. to Dismiss at

2, n.1. Additionally, WWE states that with the sole exception of a book containing a handful of textual references to plaintiff's name in the context of describing another wrestler's career, WWE is unaware of any other merchandise featuring plaintiff. Therefore, WWE requests that plaintiff be required to provide a more definite statement pursuant to Fed. R. Civ. P. 12(e) specifying exactly what products he contends contain his name and likeness. Plaintiff did not respond to WWE's request.

A party may "move for a more definite statement when a pleading 'is so vague or ambiguous that the party cannot reasonably prepare a response.'" Marshall v. Mayor & Alderman of City of Savannah, Ga., 366 F. App'x 91, 101 (11th Cir. 2010) (quoting FED. R. CIV. P. 12(e)). The Court agrees with WWE that plaintiff's statement in his complaint about the other merchandise containing his name and likeness is not supported sufficiently by factual statements so as to put WWE on notice of his claim. Therefore, the Court grants WWE's request for plaintiff to file a more definite statement. In addition, even if WWE intended for its motion to dismiss to serve as a dismissal against all of the merchandise in the complaint, the Court is unable to apply WWE's arguments to other merchandise without knowing the details

32

page 33 of 35

of that merchandise.  For example, whether a doll bearing plaintiff's name and likeness would be preempted by the Copyright Act may require a different analysis than the analysis for a video recording of an athletic event. Furthermore, it would be a waste of judicial resources for the Court to engage in such analysis if no other merchandise exists, as WWE alleges.

Accordingly, the Court directs plaintiff to file an amended complaint containing a more definite statement specifying the other merchandise he claims contains his name and likeness to support his invasion of privacy and violation of a right of publicity claims within fourteen (14) days from the date of entry of this order.[4] See FED. R. CIV. P. 12(e).  Failure by plaintiff to do so will result in dismissal of his invasion of privacy and violation of a right of publicity claims concerning other merchandise against WWE. Should WWE intend to move to dismiss plaintiff's claims after plaintiff files an amended

---

[4] After the Court's rulings that plaintiff cannot sustain the claims of unjust enrichment, violation of GUDTPA, and unauthorized use of intellectual property, the only viable claims to which the other merchandise might apply are plaintiff's claims for invasion of privacy and a violation of a right to publicity.

complaint, WWE will have fourteen (14) days from the date plaintiff files his amended complaint to move for dismissal.[5]

Finally, pursuant to Local Rule 3.3(A), counsel for all private parties in civil cases must at the time of first appearance file with the clerk a certificate of interested persons. LR 3.3, NDGa. This case has proceeded beyond the attorneys' first appearance. Accordingly, the Court ORDERS counsel for WWE and plaintiff to comply with Local Rule 3.3 and file a certificate of interested persons within seven (7) days from date of entry of this order. See Local Rule 3.3(C) for the specific form of certificate that counsel must file.

Conclusion

For the foregoing reasons, the Court GRANTS defendant Linda McMahon and Vincent McMahon's motion to dismiss [#4] and DISMISSES WITHOUT PREJUDICE plaintiff's claims against the McMahon defendants,

---

[5] It would be premature for the Court to address the parties' arguments with regard to the statute of limitations because the issue will be moot if plaintiff fails to specify any other merchandise on which to base his invasion of privacy and violation of right to publicity claims. Should plaintiff file an amended complaint and WWE moves for dismissal, the Court would then address the issue of the statute of limitations.

including plaintiff's claim for negligent supervision.  The Court GRANTS defendant WWE's motion to dismiss [#5] and DISMISSES WITH PREJUDICE plaintiff's claims against WWE for unjust enrichment, unauthorized use of intellectual property, and violation of the Georgia Uniform Deceptive Trade Practices Act, as well as plaintiff's claims for invasion of privacy and violation of right to publicity as those claims relate to DVDs and video recordings.  The Court DIRECTS plaintiff to file an amended complaint containing a more definite statement pursuant to Fed. R. Civ. P. 12(e) within fourteen (14) days from the date of entry of this order specifying the other merchandise which contains his name and likeness on which he bases his claims for a violation of his right to publicity and invasion of privacy.  The Court ORDERS counsel for WWE and plaintiff to comply with Local Rule 3.3 and file a certificate of interested persons within seven (7) days from date of entry of this order.

IT IS SO ORDERED, this 22 day of August, 2012.

Marvin H. Shoob  Senior Judge
United States District Court
Northern District of Georgia