UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DOUGLAS DUANE SOMERSON,          :

     Plaintiff,                              :

                                   CIVIL ACTION NO.

v.                                              :

                                   1:12-CV-00043-MHS

WORLD WRESTLING                          :
ENTERTAINMENT, INC.,

                            :

     Defendant.

                            :

## <u>ORDER</u>

This case is before the Court on defendant's second motion to dismiss. For the reasons set forth below, the Court grants defendant's motion.

<u>Background</u>

On November 28, 2011, plaintiff Douglas Duane Somerson filed a complaint against World Wrestling Entertainment, Inc. ("WWE"), Vincent McMahon, and his wife Linda McMahon ("the McMahon defendants"), in the Superior Court of Fulton County, Georgia. Plaintiff alleged the following claims against defendants: (1) invasion of privacy; (2) unauthorized use of intellectual property; (3) unjust enrichment; (4) violation of the Georgia

Uniform Deceptive Trade Practices Act ("GUDTPA"), O.C.G.A. § 10-1-372; (5) violation of right of publicity; and (6) negligent supervision. In sum, plaintiff, a professional wrestler, alleged that defendants had used his name and likeness in certain merchandise without paying plaintiff any royalties and without his consent or authorization.

On January 5, 2012, defendants removed this action to this Court on the basis of federal question jurisdiction.   After the parties' filing of supplement briefs on the issue of jurisdiction, the Court concluded that it had diversity jurisdiction. See 28 U.S.C. § 1332(a).

Next, WWE and the McMahon defendants each filed motions to dismiss.   In an Order dated August 23, 2012, the Court granted the McMahon's motion to dismiss and dismissed without prejudice plaintiff's claims against the McMahon defendants for lack of personal jurisdiction and insufficient service of process.

As for WWE's motion to dismiss, the Court noted that the parties focused on plaintiff's claims with regard to DVDs and video recordings of

AO 72A
(Rev.8/82)

plaintiff's wrestling activities. First, the Court found that plaintiff was a public figure, and therefore, the Court addressed plaintiff's claims for a violation of a right to publicity and an invasion of privacy together referring to them as one claim for a violation of a right to publicity. Next, the Court determined that claims based on video recordings of plaintiff's wrestling performances were preempted under the Copyright Act because plaintiff's rights that were at issue fell within the subject matter of copyright and were equivalent to the exclusive rights of section 106 under the Copyright Act. Therefore, the Court dismissed plaintiff's claims for invasion of privacy and violation of a right to publicity as those claims related to DVDs and video recordings.

Next, the Court dismissed plaintiff's claim for the unauthorized use of intellectual property because it did not meet the standards of Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The Court also dismissed plaintiff's unjust enrichment claim because he asserted it as a separate tort and not as an alternative theory of recovery for a failed contract. In addition, the Court dismissed plaintiff's claim under GUDTPA because plaintiff could not recover money damages

3

under GUDTPA and the claim did not meet the standards of <u>Iqbal</u> and <u>Twombly</u>.

Finally, the Court explained that although the parties had focused on DVDs and video recordings, plaintiff's claims as pled in his complaint were for WWE using his name and likeness in releasing not only DVDs but also "'books, dolls, and other commercial products.' Compl. ¶ 19." Order, at 31. WWE requested that plaintiff be required to provide a more definite statement pursuant to Fed. R. Civ. P. 12(e) specifying exactly what products he contends contain his name and likeness. The Court granted WWE's request. The Court directed plaintiff to file an amended complaint containing a more definite statement specifying the other merchandise he claims contains his name and likeness to support his invasion of privacy and violation of a right of publicity claims. The Court also pointed out that after its rulings that plaintiff could not sustain the claims of unjust enrichment, violation of GUDTPA, and unauthorized use of intellectual property, the only viable claims to which the other merchandise might apply were plaintiff's claims for invasion of privacy and a violation of a right to publicity.

4

In accordance with the Court's Order, plaintiff filed an amended complaint against only defendant WWE. Defendant has now moved to dismiss plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted.

Legal Standard

Under both Twombly and Iqbal, the Court is required to accept well-pleaded facts, not legal conclusions, as true when considering a motion to dismiss. Iqbal, 129 S. Ct. at 1949-50; Twombly, 550 U.S. at 555. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations and citations omitted). Instead, the complaint must set forth factual allegations "plausibly suggesting (not merely consistent with)" a violation of the law. Id. at 557.

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S.

at 570). The Iqbal court explained as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

129 S. Ct. at 1949 (internal quotes and citations omitted).

"Determining whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing court to draw

on its judicial experience and common sense." Id. at 1950 (citation omitted).

"But where the well-pleaded facts do not permit the court to infer more than

the mere possibility of misconduct, the complaint has alleged – but it has not

'show[n]' – 'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P.

8(a)(2)). In further clarifying the Twombly standard, the Supreme Court has

adopted a two-pronged approach to evaluating motions to dismiss: (1)

eliminate any allegations in the complaint that are merely legal conclusions,

and (2) where there are well-pleaded factual allegations, "assume their

6

veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S. Ct. at 1950.

Discussion

I. Facts

Plaintiff brings one claim for an invasion of privacy and one claim for a violation of a right of publicity. Accepting the well-pleaded facts in plaintiff's complaint as true, plaintiff alleges that he is a highly successful professional wrestler and entertainer who began working as a professional wrestler in 1967. He has worked under the name and persona "'Pretty Boy' Doug Somers," and he has invested years of his life developing and maintaining this persona. Am. Compl. ¶ 10. The persona of "Pretty Boy" Doug Somers is known and loved world wide by professional wrestling fans. In working as a professional wrestler, he has suffered numerous injuries including several broken bones and numerous concussions. Due to these injuries, he ceased working in February 2012.

Plaintiff has never entered into any agreement with WWE or any predecessor entity with regard to the right to use his name and/or likeness.

7

He alleges that WWE has repeatedly used his name and likeness for its own commercial gain, including marketing and publicity efforts, without his permission and without compensating him.  Plaintiff alleges that the failure to even attempt to contact plaintiff to obtain the right to use his name and likeness as well as the failure to make any attempt to compensate him demonstrates bad faith and malice by WWE.

Plaintiff asserts that defendant's website features his name and persona as part of its marketing and publicity efforts in at least nine different places.  Plaintiff provides the nine website addresses.  Plaintiff also contends that WWE has placed his image on the cover of at least one DVD.

## II.  Parties' Arguments & WWE's Websites

WWE argues that plaintiff's claim for a violation of a right to publicity fails because the references to plaintiff's name on the websites are protected by the First Amendment to the U.S. Constitution.  WWE contends that the textual references to plaintiff's name on the website either (a) describe plaintiff's participation in particular matches that were aired on WWE's 24/7 television network; or (b) plaintiff's role in a tag team with another wrestler

in the context of historical narratives of notable WWE performers and events. WWE avers that information such as this regarding the accomplishments of athletes or entertainers is matter in the public interest and therefore protected by the First Amendment. WWE explains that this information is not part of any advertisement that suggests a false endorsement by plaintiff of WWE goods or services and instead, the references to plaintiff's name communicate truthful information regarding plaintiff's career in the American Wrestling Association ("AWA").

In response, plaintiff argues that WWE is using fictional narratives about plaintiff as part of its advertising efforts. Plaintiff contends that WWE is not reporting on a newsworthy event and the information about plaintiff is not a matter of public interest. Instead, plaintiff asserts that defendant is using plaintiff's name and persona solely to further its own commercial efforts at marketing WWE's product of professional wrestling. Plaintiff avers that defendant uses plaintiff's identity as part of a fictionalized storyline about the lives of various wrestling personalities to further interest in defendant's product, which is professional wrestling.

The website addresses in plaintiff's amended complaint along with the exact text from that address referencing plaintiff's name are as follows:[1]

1.      "Summary: Good Ol' St. Mick Foley presents memorable matches and moments from Holidays past. The Midnight Rockers, Shawn Michaels and Marty Jannetty, battle Buddy Rose and Doug Somers in a Steel Cage at AWA Brawl in St. Paul. From 12/25/86."
http://www.wwe.com/shows/classicsondemand/archive/dec2006shorties

2.      "Summary: 'The Territories' looks back at Superstars before they hit the big time. Before WWE Superstardom as Razor Ramon and Mr. Perfect, Scott Hall and Curt Hennig team up to face 'Playboy' Buddy Rose and 'Pretty Boy' Doug Somers in the AWA."
http://www.wwe.com/shows/classicsondemand/archive/sep2006shorties

3.      "In 1986, Rose returned to Minneapolis, and while competing anew in the AWA, he and his tag team partner Pretty Boy Doug Somers had an intense rivalry against the young, upstart team of Shawn Michaels and Marty Jannetty, then known as The Midnight Rockers."
www.wwe.com/superstars/buddyrose

4.      "·1/27/1987: [Shawn Michaels] with Marty Jannetty (Midnight Rockers) def. Buddy Rose & Doug Somers"
www.wwe.com/superstars/wwealumni/shawnmichaels/titlehistory

---

[1] The Court may consider the evidence of the websites and the statements identifying plaintiff because the website addresses are provided in plaintiff's complaint, defendant attached copies of screenshots of the websites to its motion to dismiss, the websites and identifying information are central to plaintiff's claims, and neither party has challenged the authenticity of the websites, the identifying information, or defendant's exhibits. See SFM Holdings, Ltd. v. Banc of Am. Secs., LLC, 600 F.3d 1334, 1337 (11th Cir.2010) (district court may consider evidence in ruling on a motion to dismiss if it is central to the plaintiff's claim and the authenticity is not challenged).

AO 72A
(Rev.8/82)

5.   "In St. Paul, the popular Midnight Rockers of Marty Jannetty and future WWE Hall of Famer Shawn Michaels finally dethrone Buddy Rose & Doug Somers to become the tag champions."
www.wwe.com/classics/awa/history-of-awa/page-4

6.   "-1/27/1987: [Shawn Michaels] with Marty Jannetty (Midnight Rockers) def. Buddy Rose & Doug Somers"
www.wwe.com/superstars/specialsections/hbk/titlehistory

7.   "It was during this time that [Sensational Sherri] began perfecting her skills as a manager, leading 'Playboy' Buddy Rose and 'Pretty Boy' Doug Somers to the AWA Tag Team Championship."
www.wwe.com/inside/news/sherripasses

8.   "It was during this time that [Sensational Sherri] began perfecting her skills as a manager, leading 'Playboy' Buddy Rose and 'Pretty Boy' Doug Somers to the AWA Tag Team Championship."
www.wwe.com/superstars/sherrimartel

9.   "In 1986, Rose returned to Minneapolis, and while competing anew in the AWA, he and his tag team partner Pretty Boy Doug Somers had an intense rivalry against a young, upstart team known as the Midnight Rockers, a.k.a. Shawn Michaels and Marty Jannetty."
www.wwe.com/inside/news/10066160

III. Georgia's Right to Publicity

As the Court explained in its Order from August 23, 2012, "[t]here is no substantive difference between the interests protected by the common law 'right of publicity' and the interests protected by the appropriation prong of the invasion of privacy tort." Thoroughbred Legends, LLC v. The Walt Disney Co., 1:07-CV-1275-BBM, 2008 WL 616253, at *11 n.13 (N.D. Ga. Feb.

AO 72A
(Rev.8/82)

12, 2008).   Instead, as the Georgia Supreme Court has explained, the difference depends on whether the person is a private citizen or a public figure: "We conclude that while private citizens have the right of privacy, public figures have a similar right of publicity." <u>Martin Luther King, Jr., Ctr. for Soc. Change, Inc. v. Am. Heritage Products, Inc.</u>, 250 Ga. 135, 143 (1982). Plaintiff alleges in his complaint that he is a "highly successful professional wrestler and entertainer," he has "invested years of his life developing and maintaining the wrestling persona of 'Pretty Boy' Doug Somers," and this persona is "known and loved world wide by Professional Wrestling Fans." Am. Compl. ¶¶ 4, 10, 11.   Therefore, plaintiff contends that he is a public figure.   Accordingly, the Court will address plaintiff's claims for an invasion of privacy and right to publicity together, referring to them both as a violation of a right to publicity.

A claim for a violation of a right to publicity under Georgia law protects against "the appropriation of another's name and likeness . . . without consent and for the financial gain of the appropriator . . . whether the person whose name and likeness is used is a private citizen, entertainer, or . . . a public figure who is not a public official." <u>Toffoloni v. LFP Publ'g Group, LLC</u>,

572 F.3d 1201, 1205 (11th Cir. 2009) (quoting Martin Luther King, Jr., Ctr. for Soc. Change, Inc., 250 Ga. at 143). "The right of publicity may be defined as [an individual's] right to the exclusive use of his or her name and likeness." Toffoloni, 572 F.3d at 1205 (quoting Martin Luther King, Jr., Ctr. for Soc. Change, Inc., 250 Ga. at 143). In Georgia, the right of publicity encompasses the "rights of private citizens, as well as entertainers, not to have their names and photographs used for the financial gain of the user without their consent, where such use is not authorized as an exercise of freedom of the press." Toffoloni, 572 F.3d at 1206 (quoting Martin Luther King, Jr., Ctr. for Soc. Change, Inc., 250 Ga. at 143).

However, as the Eleventh Circuit has recognized, the Restatement (Second) of Torts "tempers the right of publicity" by providing the following:

> No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter, and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right to privacy is invaded.

Toffoloni, 572 F.3d at 1206-7 (quoting Restatement (Second) of Torts § 625C cmt. d (1977)). Therefore, the right of publicity does not attach "to that which

13

is open to public observation." <u>Toffoloni</u>, 572 F.3d at 1207.  The question is "whether the information disclosed was public rather than private - whether it was generally known and, if not, whether the disclosure [was made] to the public at large."  <u>Id.</u> at 1207 n.1.


IV.  First Amendment & Newsworthy Exception

The right to publicity is in tension with freedoms of speech and the press guaranteed by the First Amendment to the U.S. Constitution as well as Georgia's state constitution.  <u>Id.</u> at 1207.  In order to carefully balance these rights against the right of publicity, the Georgia courts have adopted a "newsworthiness" exception to the right of publicity.  <u>Id.</u> at 1208.  "The Supreme Court of Georgia has held that 'where an incident is a matter of public interest, or the subject matter of a public investigation, a publication in connection therewith can be a violation of no one's legal right of privacy." <u>Id.</u> (quoting <u>Waters v. Fleetwood</u>, 212 Ga. 161, 167 (1956)).


There are several factors that a court may consider in determining whether a particular fact qualifies as newsworthy: (1) "the depth of the intrusion into the plaintiff's private affairs"; (2) "the extent to which the

14

plaintiff voluntarily pushed himself into a position of public notoriety"; and (3) "whether the information is a matter of public record." Toffoloni, 572 F.3d at 1208 n.2 (quotation omitted).

Under the first and third factors, the information on the websites does not intrude into plaintiff's private affairs and is a matter of public record. The information is essentially a timeline of plaintiff's wrestling activities. According to the websites, in 1986, plaintiff was in a tag team wrestling match with Buddy Rose against other wrestlers, and plaintiff's team had an intense rivalry against Shawn Michaels, a.k.a., the Heartbreak Kid. "Sensational" Sherri Martel managed plaintiff's tag team and led them to the AWA Team Championship.   In 1987, another tag team duo named the Midnight Rockers defeated Rose and plaintiff thereby taking over the title of tag team champions.   None of this information is  private.  In fact, a quick internet search shows that this information is available on numerous websites separate from the WWE's website.  There can be "no liability when the defendant merely gives further publicity to information about the plaintiff which is already public." Cox Commc'ns, Inc. v. Lowe, 173 Ga. App. 812, 814 (1985) (quoting Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 494, (1975)).

The second factor – the extent to which the plaintiff voluntarily pushed himself into a position of public notoriety – weighs against plaintiff. As alleged in his amended complaint, plaintiff began working as a "professional" wrestler in 1967. Am. Compl. ¶ 5. The use of the term professional implies that plaintiff was wrestling for profit and for a living, versus as a hobby or an amateur. Additionally, plaintiff alleges that he has worked under the name and persona of "Pretty Boy" Doug Somers, he invested years of his life developing and maintaining this persona, and this persona is known and loved worldwide. Am. Compl. ¶¶ 6, 10-11. The Merriam-Webster dictionary defines "persona" as "the personality that a person . . . projects in public." http://www.merriam-webster.com/dictionary/persona. Therefore, "Pretty Boy" was plaintiff's public image versus the private life of Doug Somers. Plaintiff voluntarily pushed himself into a position of public notoriety by investing years of his life in developing and maintaining the "Pretty Boy" persona. Thus, the facts about the wrestling activities of "Pretty Boy" Doug Somers are part of plaintiff's public image and matters of public interest.

The Court finds <u>Gionfriddo v. Major League Baseball</u> to be instructive in this case. 114 Cal. Rptr. 2d 307 (Cal. Ct. App. 2001). In <u>Gionfriddo</u>, former

professional baseball players sued defendants Major League Baseball and others who produced and distributed media related to baseball. 114 Cal. Rptr. 2d at 310.  Defendants included the plaintiff's names and statistics in baseball programs and on its baseball website.  Id. at 311. The references to the plaintiffs appeared alongside other players, in written accounts, or in video depictions of their play.  Id. Additionally, some of the plaintiffs had still photographs from their playing days and footage of their performances included within the video histories of major league baseball and distributed by the defendants.  Id. The plaintiffs sued the defendants alleging that these uses were unauthorized and violated their rights of publicity.  Id.

The court found that the information at issue could be fairly characterized as mere bits of baseball's history and defendants were making historical facts available to the public through game programs, websites, and video clips.  Id. at 314-15.  Additionally, the public had an "enduring fascination" in the records, statistics, and memorable moments from the games, and this history of the game was "integral to the full understanding and enjoyment of the current game and its players."  Id. at 315.  The court explained that the accomplishments of "those who have achieved a marked

17

reputation or notoriety by appearing before the public such as actors and actresses, professional athletes, public officers, . . . may legitimately be mentioned and discussed in print or on radio and television." Id. at 314 (quotation omitted). The court did not limit the public's interest to current events, and instead, provided that the public was entitled to be "informed and entertained about our history." Id. The court concluded that the "recitation and discussion of factual data concerning the athletic performance of these plaintiffs command a substantial public interest, and, therefore, is a form of expression due substantial constitutional protection" under the First Amendment. Id. at 315.

Similar to these baseball players, plaintiff placed himself before the public. Plaintiff appeared in wrestling matches before thousands of spectators. See Gionfriddo, 114 Cal. Rptr. 2d at 311. Plaintiff must have understood the important role media publicity played in promoting his "Pretty Boy" persona and the public's interest in professional wrestling in general. See id. Without such media attention, plaintiff could not have become "known and loved worldwide by Professional Wrestling fans." Am. Compl. ¶ 11.

18

Additionally, the information about plaintiff on WWE's websites is historical and fact based. Plaintiff either did or did not wrestle as part of tag team; have an intense rivalry with another team; claim the AWA tag team championship; and then lose that title. Similar to Gionfriddo, this information is part of professional wrestling history, including memorable information from the matches such as the dethroning of plaintiff's tag team and the rise of the Heartbreak Kid. See Gionfriddo, 114 Cal. Rptr. 2d at 314. This history of professional wrestling is "integral to the full understanding and enjoyment of the current" professional wrestling matches and current wrestlers. See id. at 315. Thus, the professional accomplishments of plaintiff may legitimately be mentioned and discussed on WWE's websites.

Therefore, the Court concludes that the information on WWE's websites as alleged in plaintiff's amended complaint is a matter of public interest and protected by the First Amendment. See id.; see also Toffoloni, 572 F.3d at 1209 (noting that biographical article on murdered model and professional wrestler "in and of itself, certainly falls within the newsworthiness exception"); C.B.C. Distribution and Marketing, Inc. v. Major League Baseball Advanced Media, L.P., 505 F.3d 818, 823-824 (8th Cir. 2007)

19

(baseball player information including names, nicknames, likenesses, signatures, pictures, playing records, and/or biographical data of each player in an interactive form in connection with fantasy baseball products was protected by the First Amendment and superseded the players' rights of publicity).

V.  Commercial Use

Plaintiff argues that the newsworthiness exception does not apply because WWE is using plaintiff's identity solely to further its own commercial efforts at marketing its product, professional wrestling.   According to plaintiff, defendant is using his identity on its website to generate interest in its business because WWE is not reporting on newsworthy events, but instead, aims to profit from wrestling.  Plaintiff contends that WWE is not using his identity in connection with an underlying work, but instead, defendant uses his identity as part of its marketing campaign for wrestling on its website.

Indeed, Georgia courts have distinguished commercial use from newsworthy use. Toffoloni, 572 F.3d at 1209.  The Supreme Court of Georgia

AO 72A
(Rev.8/82)

has recognized that "[t]here is in the publication of one's picture for advertising purposes not the slightest semblance of an expression of an idea, a thought, or an opinion, within the meaning of the constitutional provision which guaranties to a person the right to publish his sentiments on any subject." Pavesich v. New England Life Ins. Co., 50 S.E. 68, 80 (Ga. 1905). Accordingly, a publisher may be precluded from publishing one's image for purely financial gain, such as in an advertisement. Toffoloni, 572 F.3d at 1208. Although the information on WWE's websites is not photographs, this analysis is still useful as it is appropriate for the Court to "consider whether the public interest aspect of the publication is merely incidental to its commercial purpose." Id. at 1209.

The Restatement (Third) of Unfair Competition § 46 (1995) provides that one may be liable for appropriating "the commercial value of a person's identity by using without consent the person's name, likeness, or other indicia of identity for purposes of trade." Section 47 of the Restatement explains further as follows:

> The name, likeness, and other indicia of a person's identity are used "for purposes of trade" under the rule stated in § 46 if they are used in advertising the user's goods or services, or are placed

on merchandise marketed by the user, or are used in connection
with services rendered by the user. However, use "for purposes
of trade" does not ordinarily include the use of a person's identity
in news reporting, commentary, entertainment, works of fiction
or nonfiction, or in advertising that is incidental to such uses.

After a review of the websites alleged in plaintiff's amended complaint,
the Court finds that WWE's use of plaintiff's identity is not for a commercial
transaction or a commercial use. WWE is not using plaintiff's identity to
advertise WWE's goods or services or in connection with such goods and
services. With regard to the websites, plaintiff has not alleged that WWE has
placed his identity on merchandise. Plaintiff's identity is not being used to
sell a product in an advertisement, but instead, is referred to as part of the
historical events of professional wrestling. See Gionfriddo, 114 Cal. Rptr. 2d
at 316 (finding no commercial use where disputed uses were included as
minor historical references to plaintiff baseball players within game
programs and websites and in videos documenting baseball's past, rather
than in advertisements selling a product).

Plaintiff asserts that his identity was used to increase interest in
wrestling, a product belonging to WWE. Similar to plaintiff's argument, the

22

baseball player plaintiffs in <u>Gionfriddo</u> argued that their information was used to increase interest in baseball.  <u>See</u> <u>Gionfriddo</u>, 114 Cal. Rptr. 2d at 316.  The California Court of Appeals questioned "whether the [baseball] statistics are provided to stimulate interest or simply to respond to the interest already present."  <u>Id.</u>  The same could be said of plaintiff's information on WWE's website: whether WWE itself is providing information to stimulate interest or whether it is simply responding to the fans' pre-existing interest in the history of professional wrestling.  "Whichever is true, however, [WWE's] uses are not advertisements, nor speech where the primary message is to buy."  <u>Id.</u> (quotation omitted).

Plaintiff's argument that WWE is using his identity to market wrestling and attract people to the WWE website would amount to, if anything, advertising that is incidental to the use of plaintiff's identity.  <u>See</u> Restatement (Third) of Unfair Competition § 47.  From the website addresses containing plaintiff's identifying information, one may click on other links to purchase DVDs and buy tickets to upcoming wrestling matches.  Although defendant is selling a product through these links, plaintiff's identity is not being used to endorse or the sell the product and his identity is not referenced

on these separate web pages. Similarly, on the web pages with plaintiff's information there is a link titled, "WWE Shop," which takes the user to a separate website where one can purchase WWE merchandise. However, there is no merchandise available related to plaintiff nor is his identity being used to sell products through this link. Comment c of § 47 the Restatement explains that the "fact that the publisher or other user seeks or is successful in obtaining a commercial advantage from an otherwise permitted use of another's identity does not render the appropriation actionable." Accordingly, here, WWE may obtain a commercial advantage if people are drawn to the websites because of plaintiff's biographical information and historical wrestling facts, and then those individuals click on another link to purchase tickets or other merchandise. Yet, such commercial use would be incidental to the public's interest in the history, news reporting, and entertainment of professional wrestling. Cf. Toffoloni, 572 F.3d at 1209-13 (finding that nude photographs were not incidental to a biographical article or to the public's interest in the death of a model where the heart of the article was the publication of nude photographs).

24

Plaintiff relies on Abdul-Jabbar v. General Motors Corp., 85 F.3d 407 (9th Cir. 1996), for his position that his identity is being used commercially and the fact that he was a professional athlete or an entertainer does not permit WWE to use his identity. However, Abdul-Jabbar is very different from this case. There the plaintiff Kareem Abdul-Jabar, named Ferdinand Lewis ("Lew") Alcindor at birth, sued the makers of a car for a violation of his rights of privacy for using his former name in a commercial broadcast during the 1993 National Collegiate Athletic Association men's basketball tournament. Id. at 409-10. The record showed the following facts had occurred:

> A disembodied voice asks, "How 'bout some trivia?" This question is followed by the appearance of a screen bearing the printed words, "You're Talking to the Champ." The voice then asks, "Who holds the record for being voted the most outstanding player of this tournament?" In the screen appear the printed words, "Lew Alcindor, UCLA, '67, '68, '69." Next, the voice asks, "Has any car made the 'Consumer Digest's Best Buy' list more than once? [and responds:] The Oldsmobile Eighty-Eight has." A seven-second film clip of the automobile, with its price, follows. During the clip, the voice says, "In fact, it's made that list three years in a row. And now you can get this Eighty-Eight special edition for just $18,995." At the end of the clip, a message appears in print on the screen: "A Definite First Round Pick," accompanied by the voice saying, "it's your money." A final printed message appears: "Demand Better, 88 by Oldsmobile."

Id.

The Ninth Circuit Court of Appeals found that while the plaintiff's basketball record may have been newsworthy, the defendant used the information in the context of an automobile advertisement, not in a news or sports account, and therefore, the right of privacy superseded any newsworthy exception. Id. at 416.

Unlike Abdul-Jabar, plaintiff's identity is not being used as part of an advertisement. He is not endorsing or selling a product. There is no link between plaintiff and a product, so as to attract the public's attention to the product and give WWE a commercial advantage through the use of plaintiff's identity.

Finally, plaintiff argues that defendant is using his identity to report on activities of WWE employees and their associates in a "fictionalized narrative" developed by WWE itself. However, nowhere in plaintiff's amended complaint has he alleged that the facts about him on the WWE websites are fictional or a made up story by defendant. Such cases are more appropriately regarded as actions for defamation or for invasion of privacy by placing the plaintiff in a false light, but plaintiff has not alleged either of

26

those actions here. See Restatement (Third) of Unfair Competition § 47 cmt c.

Even if plaintiff intends by his argument that the WWE controlled who won matches and determined who would become champions, such that the narrative or story of "Pretty Boy" was fictional, the events listed on WWE's websites would have occurred as part of the "story" of wrestling. Furthermore, even if these facts were part of a larger fictionalized story known as "Professional Wrestling," plaintiff alleges in his complaint that he was a culprit in developing and maintaining the "Pretty Boy" persona, which operated in the WWE. Additionally, plaintiff admits in his amended complaint that he was a successful professional wrestler or entertainer. If not a sport in the true sense of the word, then professional wrestling and the historical information about it is at least a form of entertainment, which is protected by the First Amendment. See Lucas v. Fox News Network, LLC, 248 F.3d 1180, 2001 WL 100181, at *2 (11th Cir. 2001) (table case) (activities meant to inform as well as entertain are protected by the First Amendment); C.B.C. Distribution and Marketing, Inc., 505 F.3d at 823 (noting that "speech that entertains, like speech that informs, is protected by the First

27

Amendment because the line between the informing and the entertaining is too elusive for the protection of that basic right") (quotation omitted); Gionfriddo, 114 Cal. Rptr. 2d at 314 ("Entertainment features receive the same constitutional protection as factual news reports.").

Therefore, the Court concludes WWE is not using plaintiff's identity for a commercial use and that WWE's use falls under the newsworthy exception. Accordingly, WWE's use of plaintiff's identity on its websites as alleged in plaintiff's amended complaint is protected by the First Amendment and does not violate plaintiff's right to publicity.

VI. Cover Image on DVD

Plaintiff alleges in his amended complaint that WWE has impermissibly placed his image on the cover of at least one DVD, which it sells under the title "The Spectacular Legacy of the American Wrestling Association." In moving to dismiss, defendant argues that there is no image of plaintiff on the DVD front or back covers. Defendant explains that plaintiff's name is only referenced in a booklet inside the DVD as part of the list of wrestling matches that are depicted in the DVD, and that this booklet

28

is available only to customers who purchase the DVD.  Plaintiff did not respond to defendant's arguments.

Plaintiff's failure to address defendant's arguments or defend on any ground his allegations in his amended complaint regarding the DVD indicates no opposition to defendant's motion to dismiss on this issue.  See LR 7.1B, NDGa.  In addition, defendant is correct that plaintiff's image appears nowhere on the front or back cover of the DVD.[2]  Therefore, there is no merit to plaintiff's claims in his amended complaint that WWE has used his name, likeness, and/or persona in its marketing and publicity efforts by placing his name, likeness, or persona on items which it sells and by using his name, likeness, and persona to market and publicize its products because there is no name, likeness, or persona of plaintiff on the front or back cover of the DVD.  Additionally, WWE could not be marketing the DVD by listing his name in the booklet to describe a match on the DVD because the booklet was

---

[2] Defendant has submitted a copy of this DVD as part of its motion to dismiss.  Because the DVD is central to plaintiff's claims and neither party has challenged its authenticity, the Court will consider the DVD.  See SFM Holdings, Ltd., 600 F.3d at 1337.

available on the inside of the DVD cover only to those who had already purchased it.

Conclusion

For the foregoing reasons, the Court GRANTS defendant's second motion to dismiss [#19] and DISMISSES this action.

IT IS SO ORDERED, this ____ day of March, 2013.

Marvin H. Shoob, Senior Judge
United States District Court
Northern District of Georgia

30